# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

PAUL RAMOS                              :      CA 09-0118-KD

vs.                                     :

UNITED STATES OF AMERICA                :      CR 06-0275-KD


## REPORT AND RECOMMENDATION

This matter is before the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B) and

Rule 8(b) of the Rules Governing Section 2255 Proceedings, on Petitioner's § 2255

Motion to Vacate (Doc. 223-1), filed March 6, 2009.   A review of the entire record has

failed to reveal any reason to grant habeas relief in this action.   Therefore, the motion for

habeas relief should be **DENIED** and a finding made that Petitioner is not entitled to a

Certificate of Appealability (COA).   An evidentiary hearing is likewise unwarranted

in this action, nor should Ramos be allowed to proceed on appeal *in forma pauperis*.

## FACTUAL BACKGROUND

On December 27, 2006, Petitioner Ramos was indicted by the Grand Jury with

conspiracy to possess with intent to distribute more than 15 kilograms of

methamphetamine ICE (Count One) and more than 10 kilograms of cocaine (Count Two),

both Schedule II controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

Ramos, through his court-appointed attorney, Mr. Richard Alexander, filed a Notice of

Intent to Plead Guilty (Doc. 119) on May 31, 2007, and indeed on June 20, 2007,

Petitioner Ramos pled guilty to one count of conspiracy to possess with intent to

distribute methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846. (Doc. 138, Factual Resume and Plea Agreement, p. 1.) In the guilty plea hearing held before Judge Dubose on July 21, 2007, Ramos was asked if he had an opportunity to review the plea agreement with this attorney before he signed it, and he responded in the positive. (Doc. 231, Guilty Plea transcript, p. 5.) Ramos also affirmed that he was not being treated for mental illness or under the influence of narcotics of any kind or alcohol. (*Id.*) Ramos next stated that he received a copy of the indictment in his case, had an opportunity to read and review it with his attorney, and that he understood the charge in the indictment. (*Id.*) When asked if he was "fully satisfied with the representation advice [sic] given to [him] by [his] counsel," Ramos replied in the affirmative. (*Id.*) When asked if anyone had made any promises to him or had attempted to force his guilty plea, Ramos responded in the negative. (*Id.* at 6.) Judge Dubose closed out the hearing:

> You understand you are pleading to a felony offense and if you are convicted you will lose the right to vote, hold public office[, and] the right to a firearm?

> Defendant: Yes, ma'am.

> The Court: The maximum possible penalty in your case is a mandatory 20 years . . . the Court will have no discretion but to give you at least 20 years in prison. You understand that?

> Defendant: Yes, ma'am.

> The Court: And that you are subject [to a penalty consisting of a term of] up to life in prison, [an] $8 million fine, ten years['] supervised release time[,] and a[n] hundred dollars['] special assessment. You understand those are the maximum possible penalties in your case?

2

Defendant: Yes, ma'am.

The Court: You understand [that] there are sentencing guidelines that the Court must consider in determining your sentence. Have you gone over those guidelines with your attorney?

Defendant: Yes, ma'am.

The Court: You understand [that] whatever he told you or whatever the government told you is merely an estimate and we won't know what your guidelines are until we have actual[ly] done a full background check?

Defendant: Yes, ma'am.

The Court: You also understand that they are advisory and [that] I don't have to follow the guidelines?

Defendant: Yes, ma'am.

The Court: Now, you have a right to plead not guilty and you will be presumed innocent. The government would have to prove your guilt[] beyond a reasonable doubt. You will have the right of assistance of counsel at trial. You will have the right to cross-examine the government's witnesses. You would have the right to present your own witnesses. You could choose to testify or not to testify. But you do understand [that by] pleading guilty today[,] you are giving up those rights?

Defendant: Yes, ma'am.

The Court: Is that what you want to do?

Defendant: Yes, ma'am.

The Court: The government would give me the elements and the facts you would rely on at trial.

Ms. Griffin: Mr. Ramos is pleading guilty to a conspiracy in violation of Title 21 United States Code Section 846. The United States would be required to prove that two or more individual[s] in some way or manner came to a mutual understanding to accomplish a common plan. And that the defendant[,] knowing the purpose of the plan[,] willfully joined

in it.

      The United States would be prepared to prove the following beyond a reasonable doubt.   That during the time frame alleged in Count One[,] Mr. Ramos sold methamphetamine to Demetrius Lutein and others in the Mobile[,] Alabama area.   That there are hotel records – excuse me, there are Continental Airline records that show flights to Mobile for Mr. Ramos in 2006.   Specifically[,] in July of 2006[,] Mr. Ramos hired David Marks to drive a Land Rover from California to Mississippi transporting methamphetamine for Mr. Ramos.   The Land Rover was subsequently transported to Mobile by another member of the conspiracy, where the methamphetamine was to be distributed.

      In August of 2006[,] the sheriff's department arrested Martin Larney[,] who also worked for Mr. Ramos[,] and seized approximately 27[]pounds of methamphetamine from a hidden compartment inside the vehicle.

      Mr. Ramos admits the United States could prove his involvement beyond a reasonable doubt with a quantity of methamphetamine to place him in a minimum mandatory ten year to life without parole statutory range.

      He understands, however, that his sentencing is a minimum mandatory of 20 years to life because of his prior drug felony.

      Mr. Ramos understands that the Court will determine the quantity of drugs for which he is accountable.   And if any sentencing enhancements apply.

      Mr. Ramos also understands [that] the United States['] position . . . at sentencing [will be] that he is responsible for a quantity of cocaine and a quantity of methamphetamine which would place him in a base offense level of 38 under the advisory sentencing guidelines.

      The Court: All right.   Do you agree to the facts that the government has stated against you?
      Defendant: Yes, ma'am.

      The Court: You agree that the government could prove those facts?

      Defendant: Yes, ma'am.

The Court: How do you plead?

Defendant: Guilty.

The Court: It's the finding of the Court in [this case] that the defendant is fully competent and capable of entering an inform[ed] plea[, t]hat the defendant is aware of the nature of the charges and the consequences of the plea[, and t]hat the plea is a knowing and voluntarily [sic] plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea is therefore accepted[,] and the defendant is now adjudicated guilty of the offense.

(*Id.* at 6-11.)

The actual plea agreement (Doc. 138), filed April 14, 2008, reads, in relevant part:

## PLEA AGREEMENT

The defendant, **RAUL RAMOS**, represented by his counsel, and the United States of America have reached a Plea Agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF DEFENDANT

1.  The defendant understands his rights as follows:

    a.  To be represented by an attorney;

    b.  To plead not guilty;

    c.  To have a trial by an impartial jury;

    d.  To confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense;

    e.  To not be compelled to incriminate himself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2.   The defendant waives rights b through e, listed above, and pleads guilty to Count 1 of the Indictment, charging a violation of Title 21, United States Code, Section 846.

3.   The defendant understands that the statements he makes under oath in the plea of guilty must be completely truthful and that he can be prosecuted for making false statements or perjury for any false statements he makes intentionally in this plea of guilty.

4.   The defendant expects the Court to rely upon his statements here and his response to any questions that he may be asked during the guilty plea hearing.

5.   The defendant is not under the influence of alcohol, drugs, or narcotics.   He is certain that he is in full possession of his senses and mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6.   The defendant has had the benefit of legal counsel in negotiating this plea agreement.   He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charges which have been brought against him. The defendant's attorney has also explained to the defendant [his or] her understanding of the United States' evidence.

7.   The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charges beyond a reasonable doubt.   The defendant and his counsel have discussed possible defenses to the charges.   *The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.*

8.   A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing.   The Factual Resume is incorporated by reference into this Plea Agreement.   The defendant and the United States agree that the Factual Resume is true and correct.

9.   *This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations apart from those set forth in this Plea Agreement.*   There have been no promises from anyone as to the particular sentence that the Court may impose.   The defendant avers

that he is pleading guilty because he knows that he is guilty.

## PENALTY

10.   The maximum penalty the Court could impose as to Count 1 of the Indictment is:

     a.   A minimum mandatory sentence of 20 years to life

without parole;

     b.   A fine not to exceed $8,000,000;

     c.   A term of supervised release of 10 years, which would follow any term of imprisonment.   If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

     d.   A mandatory special assessment of $100.

## SENTENCING

11.   The Court will impose the sentence in this case.   The United States Sentencing Guidelines apply in an advisory manner to this case. The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation.   The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the guidelines. The defendant understands that he will not be allowed to withdraw his guilty plea if the applicable Guideline range is higher than expected; if the Court departs from the applicable advisory guideline range, or if the Court imposes a sentence notwithstanding the Guidelines.

12.   The United States may provide all relevant sentencing information to the Probation Office for the purposes of the pre-sentence investigation.   Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

13. *The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.*

14. Both the defendant and the United States are free to allocute fully at the time of sentencing.

.  .  .

## UNITED STATES' OBLIGATIONS

16. The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss the remaining counts in the Indictment as to the defendant at sentencing. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

## VIOLATION OF AGREEMENT

17. The defendant understands that if he violates any provision of this agreement, the United States will be free from any obligations imposed by this agreement and will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that he might have under the 6th Amendment and/or Speedy Trial Act.

.  .  .

## ENTIRETY OF AGREEMENT

19. This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

(Doc. 138, pp. 1-8 (emphasis supplied).) Before Ramos' signature on page 8 of

the agreement is the following sworn testament:

I have consulted with my counsel and fully understand all my rights with

respect to the offenses charged in the Indictment pending against me. *I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it.* I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved [sic] the same beyond a reasonable doubt.

(*Id.* at 8 (emphasis supplied).) Ramos' attorney, Mr. Richard Alexander, signed

the following statement at the conclusion of the agreement:

I am the attorney for the defendant. *I have fully explained his rights to him with respect to the offenses charged in the Indictment in this matter.* I have carefully reviewed every part of this Plea Agreement with him. To my knowledge, *his decision to enter into this agreement is an informed and voluntary one.* I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, *his decision to stipulate to the facts is an informed, intelligent, and voluntary one.*

(*Id.* at 9 (emphasis supplied).) Finally, the factual resumé, which Ramos also signed,

reads as follows:

## FACTUAL RESUME

The defendant, **RAUL RAMOS**, admits the allegations of Count One of the Indictment.

## ELEMENTS OF THE OFFENSE

**RAUL RAMOS** understands that in order to prove a violation of Title 21, United States Code, Section 846, as charged in Count One of the Indictment, the United States must prove that:

First:    That two or more persons in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment; and

Second:   That the [d]efendant, knowing the unlawful purpose of the plan, willfully joined in it.

## OFFENSE CONDUCT

The defendant, **RAUL RAMOS**, admits [that] the United States could prove the following beyond a reasonable doubt:

During the time frame alleged in Count One of the Indictment, **RAUL RAMOS** sold methamphetamine to Demetrius Lutin and others in the Mobile, Alabama area. Continental Airlines' records show two flights to Mobile for **RAMOS** in 2006.

In late July of 2006, David Marks drove a 2002 Land Rover from California to Mississippi transporting methamphetamine for **RAMOS**. The Land Rover was then driven to Mobile by another member of the conspiracy, where the methamphetamine was to be distributed. In August 2006, the Mobile County Sheriff's Department's Narcotics Unit arrested Martin Larney and seized approximately 27 pounds of methamphetamine from a hidden compartment in the 2002 Land Rover.

**RAMOS** admits that the United States could prove his involvement beyond a reasonable doubt with a quantity of methamphetamine to place him in a minimum mandatory 10 year to life without parole statutory sentencing range. **RAMOS** understands that his sentencing range is a minimum mandatory of 20 years to life without parole based on his prior drug felony conviction. **RAMOS** understands that the Court will determine the quantity of drugs for which he is accountable and if any sentencing enhancements apply.

**RAMOS** understands that the United States' position at sentencing will be that he is responsible for a quantity of cocaine and a quantity of actual methamphetamine (ICE) which would place him in a base offense level of 38 under the advisory sentencing guidelines and that he should receive a 4[-]level increase based on role in the offense, resulting in a level 42 prior to any reduction for acceptance of responsibility. Should **RAMOS** receive a 3[-]level reduction for acceptance of responsibility, the United States contends [that] his advisory sentencing range would be a level 39, Criminal History VI, based on his career offender status, for a sentencing range of 360 months to life without parole.

(*Id.* at 1-2.) Petitioner Ramos' signature is clearly visible at the end of the factual

resume.   (*Id.* at 3.)

Pursuant to Rule 32, Federal Rules of Criminal Procedure, a sentencing hearing (Doc. 232) was held on February 28, 2008.   Prior to the hearing, a Presentence Investigation Report (Doc. 216) was prepared and provided to counsel on August 31, 2007.   Ramos and his attorney were given an opportunity to review the Report and file objections.   Ramos' lawyer indeed filed objections (Doc. 209) on July 9, 2008, expressing a total of eight misgivings with the presentence investigation report ("PSR"), including: (1) the finding in paragraph 40 of the PSR which alleges that Ramos was responsible for 19 kilograms of methamphetamine when Ramos feels that he was responsible for only 11 kilograms, (2) the attempt by the government to hold Ramos responsible for a firearm allegedly found in the possession of a co-defendant, (3) the government's contention that Ramos was an organizer or leader in the conspiracy, as opposed to a mere manager or supervisor, (4) the government's contention that Ramos has been convicted of two felonies, and therefore that he is a career offender, (5) the fact that a crime outside of the past ten years was included in paragraph 52 of the PSR, (6) an erroneous addition of a point where the point has already been added under other paragraphs, (7) the finding that Ramos is a career offender in paragraph 57, and finally (8) that the guideline provision is incorrect for the reasons previously specified.   (Doc. 209, pp. 1-4.)   Mr. Alexander supplemented these objections with a sentencing memorandum filed under seal on December 6, 2007 (Doc. 211).

As provided for in Rule 32(i)(2), Judge Dubose took testimony at the sentencing

hearing on February 28, 2008.   (Doc. 232, p. 1.)   At the hearing, Judge Dubose first noted that Ramos had an objection to the drug amount, but Mr. Alexander informed the judge that the parties had "agreed upon the drug amount in this case."   (*Id*. at 3.)   Judge Dubose then heard Mr. Alexander's arguments about the gun enhancement before deciding that it was reasonably foreseeable to Ramos that one of the people working underneath him in the conspiracy would be using guns "to protect . . . large amount[s] of money."   (*Id*. at 5-7, 9.)   Judge Dubose also found that Ramos' admissions in his guilty plea and in the factual resume supported the organizer or leader role enhancement.   (*Id*. at 9.)   Mr. Alexander then argued against the classification of Ramos as a career offender based on the inclusion of a felony conviction on his record that he argued did not have the characteristics of an offense relevant to Ramos' career offender status, but after hearing from both Mr. Alexander and the government, Judge Dubose found that "the evidence . . . submitted by the government is more than sufficient to support the finding that he does have those prior [felony] convictions."   (*Id*. at 32.)   Mr. Alexander also argued against the inclusion of the charges alleged in Count Two, which was ultimately dismissed as per the plea agreement, in the determination of Ramos' base offense level.   (*Id*. at 17.)   Judge Dubose overruled this objection, explaining that "[c]ase law is clear that relevant conduct . . . can be considered[,] [e]specially in this case where [Ramos] was dealing . . . methamphetamine and cocaine with the same coconspirators."   (*Id*. at 18.)   Finally, Mr. Alexander advanced an argument that holistically, the guideline range didn't fit the crime for which Ramos pleaded guilty, from his status as a career offender even though he had a

clean record for over a decade (from age 23 to age 38) to the gun enhancement. (*Id.* at

35-42.) After handing Ramos a sentence of 320 months, Judge Dubose stated:

> I find that the advisory guideline range is not appropriate to the facts
> and circumstances in this case only because he did plead guilty. And there
> was no credit given for that plea of guilty because his guidelines were 360
> to life regardless of whether he plead guilty or went to trial. Based only on
> that fact alone[,] I have given him a slight break from the 360 down to 320.

> I do believe that this sentence addresses the seriousness of the
> offense and the objectives of punishment, deterrence[,] and incapacitation.

(*Id.* at 46-48.) After Judge Dubose announced the sentence, Mr. Alexander mentioned

that he and Ramos had some "serious disagreements" about "how this has progressed,"

and requested that "subsequent counsel be appointed on appeal." (*Id.* at 49.)

Somewhat surprisingly, Ramos and Mr. Alexander filed a Notice of Non-Appeal

(Doc. 220) on March 7, 2008. Above Ramos' signature, dated February 29, 2008, is the

paragraph:

> I have been advised by the Court and by my attorney of my right to
> appeal my conviction and sentence. I have consulted with my attorney,
> who has explained the advantages and disadvantages of taking an appeal. I
> have had sufficient time to consider my options and require no further
> explanation. After consideration, it is my desire to inform the Court that I
> do not wish to take an appeal.

(*Id.* at 1.) Before Mr. Alexander's signature, the document reads:

> I affirm that, as counsel for Defendant, I have fully advised my client
> of the advantages and disadvantages of any appeal, given the facts and
> circumstances of this case, its procedural history, and the sentence imposed.
> I have had sufficient time to consult with my client to determine whether
> my client's decision is knowing and voluntary. It is my opinion that my
> client's decision to take no appeal is both knowing and voluntary.

(*Id.*)

In an about-face, however, Ramos filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 73) on March 6, 2009.[1]  Ramos neglected to file any accompanying brief explaining or supporting his contentions.   On February 25, 2010, the undersigned entered an order (Doc. 230) requiring the government to respond to Ramos' motion by March 29, 2010, and giving Ramos thirty days thereafter to file a reply thereto.   The government filed its response (Doc. 234) on March 15, 2010, but Ramos has neglected to file a reply.   Considering Ramos' motion liberally, it is decided that he raises a single ground for relief.[2]  That ground, naturally, is that Ramos' Sixth Amendment right to effective assistance of counsel has been denied, asserting: (1) that his counsel, Mr. Richard Alexander, failed to object to guideline enhancements that Ramos received for prior felony convictions more than ten years old and a firearm enhancement, (2) that his counsel failed to object to the enhancement he received as a leader or organizer of the methamphetamine distribution conspiracy, and (3) that his counsel failed to investigate the state felonies used to establish Ramos' status as a career offender. (Doc. 223-1, p. 5.)   As explained below, these claims are due to be resolved against the

---

[1]        The first docketed § 2255 petition was incorrectly scanned by the Clerk's Office, and crucial information relevant to Ramos' petition was therefore omitted as the motion first appeared in the record.   After the undersigned entered a Report and Recommendation (Doc. 227), however, the error came to light and the correctly-scanned petition now appears in the record in its entirety (Doc. 223-1).

[2]        The undersigned observes that, in deference to his status as a *pro se* prisoner litigant, Ramos' petition is entitled to a liberal construction.   *Gomez-Diaz v.*

Petitioner.

## II.    Discussion.

### A.    Standards of Law

#### 1.    *Habeas Standard*

It is initially noteworthy that, as this Court has previously stated:

> Habeas relief is an extraordinary remedy which 'may not do service for a direct appeal.'   *United States v. Frady*, 456 U.S. 152, 165 (1982); *Lynn v. U.S.*, 365 F.3d 1225, 1232 (11th Cir. 2004).   A defendant who has waived or exhausted his right to appeal is presumed to stand 'fairly and finally convicted.'   *Frady*, 456 U.S. at 164.   Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited.   *Addonizio v. United States*, 442 U.S. 178, 185 (1979).

*Carstarphen v. United States*, 2008 WL 4369010, *2 (S.D.Ala. Sept. 25, 2008).

#### 2.    *28 U.S.C. § 2255 Motions*

It is also important to note that all § 2255 proceedings follow a similar initial path.

The relevant portion of § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

*Id*.   "As written, § 2255 clearly provides a statutory means by which an individual under

federal sentence can obtain federal habeas corpus review of the sentence imposed."

*United States*, 433 F.3d 788, 791 (11th Cir. 2005).

*United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990).

Regarding Ramos' tripartite ineffective assistance of counsel claim, it is necessary that he "show (1) that [his] counsel's assistance fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense such that it deprived the defendant of a fair trial." *Chateloin v. Singletary*, 89 F.3d 749, 752 (11th Cir. 1996), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987). *Accord United States v. Butcher*, 368 F.3d 1290, 1293-94 (11th Cir. 2004). When such claims are raised, "a petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions.'" *Mahone v. United States*, 2007 WL 604796, *2 (S.D.Ala.) (quoting *Hagins v. United States*, 267 F.3d 1202, 1204-5 (11th Cir. 2001)). In order to overcome this presumption and establish counsel's deficient performance, the petitioner is required to show "that counsel's performance is 'objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases,'" while prejudice "requires a showing of 'reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently.'" *Mahone*, 2007 WL 604796 at *2 (citing *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990)). Furthermore, the determination of an attorney's performance must be evaluated from that attorney's perspective at the time of the alleged deficiencies. *Strickland*, 466 U.S. at 689. Finally, because the undersigned finds that Ramos' attorney during the relevant time period, Mr. Richard Alexander, is a seasoned and able advocate,

16

it is worth noting that "[t]he presumption of reasonableness [of performance] is even stronger when we are reviewing . . . an experienced trial counsel."  *Callahan v. Campbell*, 427 F.3d 897, 933 (11th Cir.), *cert. denied sub nom.*, 127 S.Ct. 427 (2006).

## B.    Ramos' First Claim of Ineffective Assistance

In his § 2255 petition, Ramos states that he was denied the effective assistance of counsel at his sentencing hearing, explaining:

> I was enhanced as a career offender with prior felony convictions that were more than 10 years old.   I was also enhanced for a co-conspirator's firearm use which was not foreseeable to me, I had no knowledge about any firearm.   My attorney was inefficient for failing to research the law.

(Doc. 223-1, p. 5.)

It is fairly easy to see that this claim of ineffective assistance of counsel fails on the merits.   Mr. Alexander, Ramos' counsel, raised the above argument(s) numerous times throughout the proceeding.   First, in the document entitled "Defendant's Position in Regards to Presentence Investigation Report" (Doc. 209), Mr. Alexander stated the following objections:

> Defendant objects to paragraph 41 [of the PSR] inasmuch as it holds Defendant Ramos responsible for a firearm that was allegedly found in the possession of a co-defendant.   No firearm was found in the possession of Defendant Ramos and, hence, Defendant Ramos should not suffer a two[-]level enhancement[,] and Defendant further notes that there is no finding that the co-defendant possessed the firearm for the furtherance of the conspiracy[,] nor that the [d]efendant was a member of the conspiracy at the time of the alleged possession of the firearm by the co-defendant.   The existence of the gun was not reasonably foreseeable by the [d]efendant.

.          .          .

17

Defendant objects to paragraph 52 [of the PSR] inasmuch as the crime stated therein did not involve a term of imprisonment exceeding one year and one month and, hence, Sentencing Guidelines §4A1.2(e)(2) controls.   That controlling factor states "any other prior sentence that was imposed within 10 years of the defendant's commencement of the instant offense should be included".   The sentence for the assault as specified in paragraph 52 was imposed on November 8, 1990.   This indictment alleges a conspiracy beginning January 1, 2005.   Hence, the criminal activity alleged in paragraph 52 is outside the 10[-]year period.

(Doc. 209, pp. 2-3.)   These objections were noted by the Probation Office in the revised Presentence Investigation Report.   (Doc. 216-1, pp. 2, 4.)   Then, at the sentencing hearing on February 28, 2008 (Doc. 232), Mr. Alexander argued vociferously against the gun enhancement and the two previous felonies being used for the computation of Ramos' status as a career offender.   (Doc. 232, pp. 3-5; 7-10; 13-17; 18-33; 39-41.)   It is clear from the record, then, that Ramos' first allegation of ineffective assistance of counsel is factually inconsistent with the record and should be decided against the Petitioner.

### C.     Ramos' Second Claim of Ineffective Assistance

Ramos' second claim of ineffective assistance of counsel involves the role enhancement he received at sentencing:

I do not qualify for a leadership enhancement; my attorney did not object to this enhancement where the district court did not perform the proper legal analysis before applying this enhancement under the USSG.   The USSG were wrongfully applied.

(Doc. 223-1, p. 5.)

Again, however, Ramos' contention is easily contradicted by the record.   First, in his filing outlining his position regarding the PSR, Mr. Alexander noted:

Defendant objects to the finding in paragraph 43 [of the PSR] concerning an enhancement for the [d]efendant's role in the criminal activity.   Although the [d]efendant participated in the illegal operation[,] he was not an organizer or a leader.   The [d]efendant denies [sic] but admits it could be arguably asserted that he was nothing more than a manager or supervisor.   Hence, the enhancement, if any, should be no more than three levels if the conspiracy is contended to consist of more than five individuals.

(Doc. 209, p. 2.)   Again, this objection found its way into the revised PSR.   (Doc. 216-1, p. 3.)   At sentencing, moreover, Mr. Alexander stated the following objection:

The next phase that I understand the Court has ruled on that I want to state my objection to was the aspect of organizer or leader[, a]s opposed to a manager or supervisor as we have suggested in our sentencing memorandum.   We do not believe there is proof beyond a reasonable doubt now before this Court as to this defendant being anything– we question whether there is enough evidence to find him to be a manager or supervisor, but we certainly disagree that he would be an organizer or leader.   And we don't believe that under Booker or Apprendi that the necessary evidence to prove that is before the Court for the Court to make that ruling.

(Doc. 232, pp. 12-13.)   Again, then, Ramos' contention of ineffective assistance of counsel is clearly baseless.

## D.   Ramos' Third Claim of Ineffective Assistance

For Ramos' third and final claim of ineffective assistance of counsel on the part of Mr. Alexander, he states:

[My t]rial attorney was inefficient [sic] for filing [sic] to investigate the state felonies that were used to enhance me [sic] as a career offender. My right to be sentenced only under accurate information was infringed. My attorney was also inefficient [sic] for allowing the [Probation Office] to present inaccurate facts.

(Doc. 223-1, p. 5.)

As with Ramos' first two contentions of ineffective assistance of counsel, this claim can be easily disposed of on the merits. First, Mr. Alexander filed a Motion to Continue Sentencing (Doc. 187) in which he explained that "there have arisen questions as to an underlying offense which causes the [d]efendant to be treated as a career offender" and that "[f]urther investigation of the underlying offense in question . . . is ongoing by the Probation Office . . . in an effort to [determine] whether the crime is in fact a felony." (*Id*. at 1.) Mr. Alexander also mentions that "additional time is necessary to accomplish not only the documentation of the offense, but also telephonic contact with the attorney representing the [d]efendant" in the relevant case. (*Id*. at 2.) Then, in his position regarding the PSR (Doc. 209), Mr. Alexander stated:

> Defendant objects to paragraph 46 [of the PSR] in that he was not previously convicted of two requisite felonies. Defendant admits that he has had one prior conviction for a felony controlled substance offense but denies the other aspect of a separate felony conviction for a crime of violence. Although [D]efendant admits the original assault case from Riverside, California alleged an aggravated assault[,] which would have been a felony, the crime to which he entered a guilty plea was (a) not a felony, [and] (b) did not carry a sentence requisite for being considered as a felony. Hence, the [d]efendant should not be determined to be a career offender as prescribed in the Sentencing Guidelines §4B1.1. Further, the [d]efendant contends that even if the assault in Riverside, California was determined to be a requisite offense for inclusion as one of the two necessary prior convictions for treatment as a career offender, that the two prior crimes must be of similar offenses, i.e.[,] not one controlled substance offense and another offense being a crime of violence.

(*Id*. at 2-3.) This objection is reflected in the revised PSR. (Doc. 216-1, pp. 3-4.) Furthermore, Mr. Alexander elaborated his argument (and inadvertently demonstrated his diligent research into Ramos' past felonies) in his Sentencing Memorandum Filed Under

Seal (Doc. 211), in which he stated:

> The two underlying prior felonies for which the [d]efendant is being treated under the PSR as a career offender are as follows:
>
> 1.       An assault of 1990 in California which was pled as an assault with a deadly weapon intended to cause great bodily harm, which the [d]efendant contends was an incident where he was accosted in a parking lot by a group of men with a baseball bat. The [d]efendant contends that he took the bat away and was in the process of trying to defend himself when in fact the group of perpetrators were overpowering him and beating him severely. At that his, at that time friend, [sic] Martin Larney, came out and found the disturbance and utilized a gun to scare off the perpetrators. The perpetrators and Larney ran off[,] leaving Ramos on the ground. The police arrived and arrested Ramos. The [d]efendant pled guilty and there is [a] significant question as to the propriety of considering this as a prior <u>felony</u> conviction. The sentence imposed in this case was 365 days jail, $1,500 restitution[,] and the [d]efendant was placed on 48 months['] probation.
>
> 2.       The second qualifying felony is not a prior conviction of a felony for a crime of violence, but rather for a felony drug conviction. The [d]efendant was evidently sentenced on that event on July 21, 1993 for 16 months in the California state prison, plus a $1[,]500 fine. The charge was for possession of a controlled substance, methamphetamine, for sale. At the time of his arrest on July 5, 1993, Ramos was stopped for a traffic violation and found to be in possession of 5.7 ounces of marijuana and 9 grams of methamphetamine. Interestingly[,] the offense report indicated that the [d]efendant was found in possession of $45.00 cash. The imposition of the sentence on the 1993 drug case also brought about the revocation of the [d]efendant's first qualifying prior felony for the assault, as mentioned in the immediately preceding paragraph.
>
> In substance[,] the [d]efendant has suffered a conviction for an assault for which he received 365 days in jail and 48 months probation, and then within the 48 months suffered a drug conviction and was sentenced to 16 months in jail and suffered the revocation of the balance of the time in his prior assault case. The defense contends that treating this [d]efendant as a career offender or following the guidelines sentencing regarding him being a career offender is not appropriate for these two crimes, especially when the jail sentences involved turned out to be served concurrently with

each other.

(*Id*. at 6-7.)   Finally, Mr. Alexander continued to demonstrate his abundant research of Ramos' prior felonies at sentencing, where he heartily defended his interpretation of Ramos' criminal record in California.   (Doc. 232, pp. 13-16; 19-33.)   Simply put, then, Ramos' claim that Mr. Alexander "failed to investigate" his prior felonies is patently false.

## E.   No Need for an Evidentiary Hearing

A sentencing court must order a hearing to determine the issues and findings of fact "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief ...."   28 U.S.C. § 2255(b).   Ramos "is entitled to an evidentiary hearing on [his] claim of ineffective assistance of counsel if [he] alleges facts which, if proven, would entitle [him] to relief."   *Ramirez v. United States*, 260 Fed. Appx. 185, 187 (11th Cir. 2007) (citing *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999)).[3]   "A district court, however, need not conduct an evidentiary hearing if it can be conclusively determined from the record that there was no denial of effective assistance of counsel." (*Id*.)

After consideration, the undersigned is not convinced that an evidentiary hearing would either further the interests of justice or comport with the considerations of judicial economy.   Indeed, no evidentiary hearing is indicated where, as here, a petitioner's claim is "affirmatively contradicted by the record," is otherwise capable of resolution based on

---

[3]      "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."   Eleventh Circuit Rule 36-2.

the existing record, or is "patently frivolous" for some other reason.   *See Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002); *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983).   Here, it is clear that Ramos' contentions are affirmatively denied by the record.   Remember that "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible" do not beget an entitlement to a evidentiary hearing.   *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (internal citations omitted); *see also Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir.), *cert. denied*, 534 U.S. 891 (2004).   As such, there is no need for an evidentiary hearing to be held in this case.

### F.      No Certificate of Appealability Warranted

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1).   A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).   Where, as here, a habeas petition is being denied on the merits of underlying constitutional claims, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong[,] "*Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'"""); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."""). The claims of ineffective assistance of counsel presented in this action are clearly and affirmatively contradicted by the record and, therefore, a reasonable jurist could not conclude that petitioner should be allowed to proceed further with respect to these claims. *Slack, supra*, 529 U.S. at 484, 120 S.Ct. at 1604.   Accordingly, petitioner is not entitled to a certificate of appealability.

## III.    Conclusion.

For all the reasons set forth in this Report, the undersigned recommends that Ramos' § 2255 petition (Doc. 223-1) be **DENIED**.   Because the meritless nature of the petition is readily apparent to the undersigned without the additional expenditure of precious government resources, there is no need for an evidentiary hearing regarding this

matter.   The nature of the claims brought likewise do not warrant the issuance of a

certificate of appealability (COA), and Ramos should not be allowed to proceed on appeal

*in forma pauperis*.

The instructions that follow the undersigned's signature contain important

information regarding objections to the Report and Recommendation of the Magistrate

Judge.

**DONE** this 9th day of August, 2010.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      ***Objection****.*   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.   Failure to   do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.   *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[4] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)****.*   Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[4]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"   Fed.R.Civ.P. 72(b)(2).